**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Pronouns: he/him/his
Laurence M. Rosen, Esq. (LR 5733)
Pronouns: he/him/his
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRAM VAN BOXTEL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TENET FINTECH GROUP INC. F/K/A PEAK FINTECH GROUP INC., JOHNSON JOSEPH, and JEAN LANDREVILLE,<br><br>Defendants. | CASE No.: 1:21-cv-06461-PKC-RLM<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ALEJANDRO HANDAL TO: (1) APPOINT LEAD PLAINTIFF; AND (2) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL**<br><br><u>CLASS ACTION</u> |

Alejandro Handal ("Movant") respectfully submits this memorandum of law in support of Movant's motion for an Order, pursuant to Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a) appointing Movant as Lead Plaintiff for the class of all purchasers or acquirers of the securities of Tenet Fintech Group Inc. f/k/a Peak Fintech Group Inc. ("Tenet Fintech" or the "Company"), between September 2, 2021 and October 13, 2021, inclusive (the "Class Period"); and

(b) approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class.

**INTRODUCTION AND BACKGROUND**

On November 19, 2021, Rosen Law commenced this action by filing a complaint against the Company, Johnson Joseph, and Jean Landreville for violations under the Exchange Act. That same day, Rosen Law issued an early notice pursuant to the PSLRA advising class members of, *inter alia*, the allegations and claims in the complaint, the Class Period, and of their option to seek appointment as Lead Plaintiff. *See* Ex. 1 hereto.

Defendant Tenet Fintech is incorporated in Canada and purports to be the parent company of a group of innovative financial technology ("fintech") subsidiaries operating in China's commercial lending industry. On September 2, 2021, Tenet Fintech, then known as Peak Fintech Group Inc., filed its Form 40-F registration statement with the SEC. Attached to the Form 40-F was, *inter alia*, an annual information form for the financial year ended December 31, 2019 (the "2019 Annual Information Form"). The 2019 Annual Information Form depicted the Company's corporate structure, which showed that the Company owned 51% of Asia Synergy Financial Capital Ltd. ("ASFC") through its wholly owned subsidiary Wuxi Aorong Ltd. ("Wuxi"). On September 14, 2021, the Company issued a press release announcing the acquisition of the Heartbeat Insurance Platform.

The complaint alleges that these statements were false and/or misleading and/or failed to disclose that: (1) the Company did not own 51% of ASFC through Wuxi; (2) the Company did not disclose its actual ownership structure of ASFC, an undisclosed and potentially problematic nominee shareholder agreement; (3) Huayan did not own the Heartbeat platform; (4) the Heartbeat platform did not exist prior to the alleged acquisition; (5) the Company faced imminent delisting from NASDAQ due to non-compliance with known regulations; and (6) as a

result of the foregoing, defendants' public statements were materially false and/or misleading at all relevant times.

On September 21, 2021, Tenet Fintech issued a press release stating that NASDAQ and the SEC advised the Company that the review of its Form 40-F was taking longer than originally expected, and as such, trading of the Company's shares on the NASDAQ was temporarily halted. Then, on September 28, 2021, the Company issued a press release announcing that it would withdraw its Form 40-F filed with the SEC, stating in pertinent part that the Company "has voluntarily withdrawn its Form 40-F (registration statement) filed with the U.S. Securities and Exchange Commission (the "SEC") while it works to comply with recent disclosure guidance provided by the SEC for companies either based in China or with the majority of their operations in China (the "Guidance")." The September 28 press release also stated that "the Company's common shares will no longer be listed on the Nasdaq Capital Market (the "NASDAQ") as of immediately prior to market open on Thursday September 30, 2021." These statements were false and/or misleading and/or failed to disclose that: (1) the "recent disclosure guidance" was in fact published on November 23, 2020, nearly a full nine months prior to the Company's uplisting; and (2) as such, the Company knew or should have known that its 40-F submission was deficient.

On September 30, 2021, the Company's shares began trading on the OTC under the ticker symbol "PKKFF." As a result of the delisting from NASDAQ, the Company's share prices fell $1.59, or over 17%, from closing at $9.09 on September 20, 2021, to open at $7.50 on September 30, 2021.

Then, on October 1, 2021, the Company issued a press release announcing the acquisition of Cubeler Inc. ("Cubeler"), an analytics and artificial intelligence company that developed and owned the technology that powers the Company's Business Hub. The press release stated that

3

the Company "has now acquired 100% of Cubeler's issued and outstanding shares form [sic] Cubeler's shareholders in exchange for $1,000,000 in cash and 11,133,012 common shares of Peak (the "Acquisition")." However, these statements were false and/or misleading statements and/or failed to disclose that: (1) Cubeler historically failed to make even minimum loan repayments to the Company; (2) the Company, instead of exercising its right on the assets, decided to purchase Cubeler; and (3) in light of the foregoing, and in consideration of the fact that Cubeler is owned by several Company insiders, the Company's acquisition of Cubeler is not based on legitimate business interests.

On October 4, 2021, market analyst Grizzly Reports published a report discussing and analyzing the Company (the "Analyst Report"). The Analyst Report stated that the Company's acquisition of Heartbeat was rife with factual inaccuracies and suspicious transactions. The Analyst Report also alleged that, contrary to disclosures that the Company owned 51% of ASFC through its wholly-owned subsidiary, the Company did not actually own any equity interest in ASFC. The Analyst Report also alleged that the Company's acquisition of Cubeler Inc. "evidence[d] self-dealing."

The next day, October 5, 2021, Defendant Joseph purported to debunk the allegations in the Analyst Report in a question-and-answer response. Defendant Joseph stated, in pertinent part, that all the Company "said is that we are acquiring all the assets of Huayan, not the company itself," and that "Huayan and Huike are affiliated companies owned by the same people and that's who our transaction is with." According to Defendant Joseph, "before proceeding with this transaction, we asked Huayan to transfer all its IP, including the Heartbeat platform, to Huike back in March." With regard to the Company's ownership of ASFC, Defendant Joseph said "the three individuals listed as shareholders of ASFC are principles of Jiu Dong. If you recall, Jiu Dong is the company we partnered with to create ASFC, which owns 49% of ASFC while we

own the 51% majority stake. Because of financial regulations at the time of its creation, we were advised that it would be better to have local Chinese individuals or companies hold our shares in ASFC on our behalf. So two of the three Jiu Dong principles holding shares in ASFC are holding those shares, representing a 30% stake, on our behalf through what's called a nominee shareholder agreement, which is perfectly legal and acceptable in China. The remaining 21% is being held on our behalf by the two companies listed as shareholders in ASFC."

However, these statements were false and/or misleading statements and/or failed to disclose that: (1) there is no evidence Huayan ever owned the Heartbeat platform or that it transferred the asset to Huike; (2) the Heartbeat website did not exist until September 14, 2021 and even then only as a placeholder webpage; (3) the largest ASFC shareholder had his shares frozen due to court sanctions; and (4) the creation of ASFC itself was likely a related-party transaction.

The truth fully emerged on October 13, 2021 when Grizzly Reports published a rebuttal report to the Company's Q&A Response (the "Rebuttal Report"). The Rebuttal Report expanded on the original Analyst Report regarding the Company's purported ownership in ASFC, stating that "the 'undisclosed nominee shareholder agreement' is a black box to investors and under certain circumstances, not legally enforceable." The Rebuttal Report also presented evidence suggesting the creation of ASFC was an undisclosed related party transaction, and highlighted Defendant Joseph's misstatements regarding the Heartbeat acquisition in the Q&A Response.

On this news, the Company's share prices dropped by $0.57 per share, or 6%, to close at $7.98 on October 13, 2021, damaging investors. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

# ARGUMENT

## I. MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice…;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

### A. Movant Is Willing to Serve as Class Representative

Movant has filed herewith a PSLRA certification attesting that he is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B. Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that…has the largest financial interest in the relief

sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax*/*Olsten*-styled[1] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $133,398 in connection with purchases of Tenet Fintech securities. *See* Ex. 3 hereto. Movant is not aware of any other movant that has suffered greater losses in Tenet Fintech securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

### C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class

---

[1] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

certification – a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

### 1. Movant's Claims are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading statements about Tenet Fintech's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2. Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any

conflict exists between Movant's claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from investments in Tenet Fintech securities and is, therefore, extremely motivated to pursue claims in this action.

**D. Movant Is Presumptively the Most Adequate Plaintiff**

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against him that would render Movant inadequate to represent the Class. Movant has 15 years of investing experience and lives in Florida. He has a degree in marketing and currently works as a marketing manager.

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore, subject to rebuttal. Accordingly, Movant has suffered financial losses and has the largest financial interest in this case of any timely movant.

**II. MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel. The firm has been actively researching Movant's and Class Plaintiffs' claims, including commencing this action, reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history of bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the nation. *See* Ex. 4 hereto. The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order; (1) appointing Movant as Lead Plaintiff of the Class; (2) approving Movant's selection of Rosen Law as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: January 18, 2022                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Pronouns: he/him/his
Laurence M. Rosen, Esq. (LR 5733)
Pronouns: he/him/his
275 Madison Avenue, 40th Floor

New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Phillip Kim