UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
**BRAM VAN BOXTEL, Individually and on Behalf of All Others Similarly Situated,**

                                   Plaintiff,           **MEMORANDUM**
                                                     <u>**AND ORDER**</u>

        -against-                                                   **21-CV-6461 (PKC) (RLM)**

**TENET FINTECH GROUP INC.**, *et al.*,

                                   Defendants.
-------------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

       Currently pending before this Court are three motions for the appointment of lead plaintiff and approval of lead counsel, filed by the following movants: (1) Erik Peterson ("Peterson"), (2) Donald Dominique ("Dominique"), and (3) Alejandro Handal ("Handal"). <u>See</u> <u>generally</u> Peterson Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (Jan. 18, 2022), Electronic Case Filing Docket Entry ("DE") #10; Dominique Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (Jan. 18, 2022), DE #5; Handal Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (Jan. 18, 2022) ("Handal Mot."), DE #8.  After filing their respective motions, movants Peterson and Dominique have since submitted notices of non-opposition to the competing motions, wherein they acknowledge that they do not possess the largest financial interest of the three movants.[1] Accordingly, the Court denies their motions as moot.  As to remaining movant Handal, and for

---

[1] As discussed *infra*, and as Peterson and Dominique effectively concede in their notices of non-opposition, see Peterson Notice of Non-Opposition to Competing Motions (Jan. 27, 2022) ("Peterson Notice") at 2, DE #13; Dominique Notice of Non-Opposition to Competing Motions (Feb. 1, 2022) ("Dominique Notice") at 2, DE #15, the financial losses suffered by movant Handal exceed those of both Peterson and Dominique.

the reasons that follow, this Court grants his motion for appointment of lead plaintiff and approval of counsel: Handal is hereby appointed as lead plaintiff and Handal's choice of counsel, The Rosen Law Firm, P.A. ("Rosen Law"), is hereby approved as lead counsel.[2]

## BACKGROUND

On November 19, 2021, plaintiff Bram van Boxtel ("van Boxtel"), represented by Rosen Law, commenced this matter by filing a class action complaint against Tenet Fintech Group Inc. ("Tenet"), Johnson Joseph, and Jean Landreville (collectively "defendants"). See generally Complaint (Nov. 19, 2021) ("Compl."), DE #1. The Complaint sets forth claims under Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, asserted on behalf of putative class members who purchased or otherwise acquired publicly traded Tenet securities between September 2, 2021 and October 13, 2021 (the "Class Period"). See Compl. ¶¶ 1-2.

On January 27, 2022, while the movants' January 18, 2022 motions for appointment of lead plaintiff and approval of lead counsel remained pending before this Court, Peterson supplemented his motion by filing a notice of non-opposition to the competing motions, acknowledging that he does not appear to have the largest financial interest in the litigation, within the meaning of the PSLRA. See Peterson Notice at 2. On the same day, Handal filed a

---

[2] An order appointing lead plaintiff and approving lead counsel qualifies as a non-dispositive matter under Rule 72(a) of the Federal Rules of Civil Procedure (the "FRCP"), allowing this Court to issue a written order (i.e., a Memorandum and Order) rather than a recommended disposition (i.e., a Report and Recommendation). See Fed. R. Civ. P. 72(a). Multiple courts, including ones in this District, have concluded that such motions are non-dispositive and may be disposed of by a magistrate judge. See, e.g., Darish v. N. Dynasty Mins. Ltd., 20-cv-5917 (ENV), 2021 WL 1026567, at *1 n.3 (E.D.N.Y. Mar. 17, 2021) (collecting cases).

memorandum in opposition to Dominique's motion to be appointed, arguing that Handal's financial interest is significantly larger than Dominque's financial interest, and that Handal otherwise meets the requisite criteria to be appointed lead plaintiff.  See generally Handal Memorandum in Opposition to Dominique Motion (Jan. 27, 2022) ("Handal Opp."), DE #14. Soon thereafter, on February 1, 2022, Dominique filed a notice of non-opposition, conceding that he does not possess the largest financial interest, and informing the Court that he does not oppose the remaining motions for appointment of lead plaintiff.  See Dominique Notice at 2. As a result, Handal is the sole movant to file an opposition and his own motion therefore stands unopposed.

## DISCUSSION

### I.     Appointment of Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in an Exchange Act case.  The PSLRA's legislative history reveals that Congress enacted the law in response to class action abuses, as plaintiffs' lawyers would otherwise "race to the courthouse" to secure the lead plaintiff designation.  In re Olsten Corp. Sec. Litig., 3 F.Supp.2d 286, 294 (E.D.N.Y. 1998) ("By enacting the PSLRA, Congress intended to 'increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'" (quoting H.R. Rep. No. 104-369 at 32 (1995))).

Procedurally, the law directs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" (generally known as the "most

adequate plaintiff"). 15 U.S.C. § 78u-4(a)(3)(B)(i). Courts follow a two-step process to determine the most adequate plaintiff. See In re Gentiva Sec. Litig., 281 F.R.D. 108, 111-12 (E.D.N.Y. 2012). In the first stage of the inquiry, the PSLRA establishes a "presumption" that the most adequate plaintiff is the person or group of persons who or that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once the court determines that there exists a presumptively adequate lead plaintiff, it must move to the second stage of the inquiry: whether that presumption has been sufficiently rebutted by any member of the purported plaintiff class. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Specifically, the presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

Id.

The Court is required to conduct this two-step analysis even when, as is the case here with respect to Handal, a movant's motion for appointment as lead plaintiff is unopposed. See City of Warren Police v. Foot Locker, Inc., 325 F.Supp.3d 310, 314 (E.D.N.Y. 2018) ("Even when a motion to appoint lead plaintiff is unopposed, the Court must still consider the factors under the PSLRA to ensure that the movant is the most adequate plaintiff." (citation omitted)).

Thus, this Court briefly reviews the statute's application in order to select a lead plaintiff and approve class counsel in this case.

### A. Timely Notification

As an initial matter, the PSLRA requires that the plaintiff who files the first action publish notice to the class within 20 days of filing the action, in "a widely circulated national business-oriented publication or wire service," advising members:

> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

On November 19, 2021, Rosen Law, as counsel for plaintiff van Boxtel, published a notice in *Newsfile Corp.* announcing that a securities class action had been filed against defendants. See PSLRA Early Notice (docketed on Jan. 18, 2022) at 2-3, DE #9-1. The published notice also advised that those wishing to serve as lead plaintiff in the purported class action "must move the Court no later than January 18, 2022" to be considered for such designation. See id. at 2. No moving party has challenged the adequacy of the November 19, 2021 notice, and the filing of a press release through *Newsfile Corp.* is an appropriate means of satisfying the PSLRA's notice requirement.[3]

---

[3] Given that *Newsfile Corp.* appears to be a business-oriented newswire and regulatory filing service, and that at least one other court has found there to be sufficient notice where a press release was issued by *Newsfile Corp.*, see Xu v. FibroGen, Inc., Case No. 21-cv-02623-EMC, 2021 WL 3861454, at *4 (N.D. Cal. Aug. 30, 2021), the Court concludes that this publication method satisfies the PSLRA's notice requirements.

Based on the November 19, 2021 publication date, the 60-day period in which members of the proposed class could move to serve as lead plaintiff of said class expired on January 18, 2022. Accordingly, having been filed on January 18, 2022, Handal's pending motion for appointment was timely filed with this Court. See Handal Mot. at 2.

In the absence of any objection to the November 19, 2021 notice, and because Handal complied with the PSLRA's 60-day deadline to move to serve as lead plaintiff of the putative class, the Court must next consider whether Handal has the largest financial interest in the relief sought, see 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), and, if so, whether he satisfies the requirements of Rule 23 of the FRCP, see 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

### B.   Largest Financial Interest

The PSLRA requires courts to "adopt a presumption that the most adequate plaintiff . . . has the largest financial interest in the relief sought by the class[,]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), but offers no statutory guidance for determining which plaintiff has the largest financial interest. See Takara Tr. v. Molex Inc., 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." (citation omitted)); accord In re Gentiva, 281 F.R.D. at 117. Courts in the Second Circuit have adopted the four "Olsten factors" to determine which plaintiff has the largest financial interest: "(1) the [total] number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." In re Olsten Corp., 3 F.Supp.2d at 295 (citing Lax v. First

Merchs. Acceptance Corp., No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); accord Chitturi v. Kingold Jewelry, Inc., 20-CV-2886-LDH-SJB, 2020 WL 8225336, at *4 (E.D.N.Y. Dec. 22, 2020); In re Gentiva, 281 F.R.D. at 112.  Most crucial to the Court's determination is the fourth factor—the approximate financial loss suffered.  See Baughman v. Pall Corp., 250 F.R.D. 121, 125 (E.D.N.Y. 2008).

Based on the record before the Court, Handal is the movant with the largest financial interest: during the Class Period, Handal asserts that he suffered losses totaling $133,398.45.  See Handal Mem. at 7; Handal Loss Chart (Jan. 18, 2022) at 2, DE #9-3; Handal Opp. at 2-3.  As previously noted, both Peterson and Dominique concede that they do not have the largest financial interest at stake here, see Peterson Notice at 2; Dominique Notice at 2, and no other individual has moved to be appointed as lead plaintiff.  Even absent the concessions of the two other movants, Handal nevertheless qualifies as the movant with the largest financial interest, given that Peterson and Dominique assert that their losses are $9,689.00 and $3,205.22, respectively.  See Peterson Loss Chart (Jan. 18, 2022) at 2, DE #12-1; Dominique Loss Chart (Jan. 18, 2022) at 2, DE #7-3.

C.     **Satisfaction of Rule 23**

After the Court has identified the plaintiff with the largest financial interest in the litigation, it must "focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements [of the PSLRA]."  Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc., 229 F.R.D. 395, 411 (S.D.N.Y. 2004) (citation and quotations omitted).  Under the PSLRA, in order to serve as lead plaintiff, the movant with the largest financial interest must also satisfy the requirements of Rule 23 of the

7

FRCP. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) specifies four requirements for certification of a class action: numerosity, commonality, typicality, and adequacy. See Fed. R. Civ. P. 23(a).

In determining whether the presumptively most adequate plaintiff satisfies Rule 23 for the purposes of the PSLRA, a court need only consider whether that movant's claims are typical and adequate, and the presumptive lead plaintiff need only make a preliminary showing as to the typicality and adequacy requirements. See In re Olsten Corp., 3 F.Supp.2d at 296 ("[T]he party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." (citations omitted)); accord In re Gentiva, 281 F.R.D. at 112 (citation omitted). At this initial stage of the litigation, a "wide ranging analysis under Rule 23 is not appropriate . . . and should be left for consideration of a motion for class certification." Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 252 (S.D.N.Y. 2003) (citation and quotations omitted).

Handal has made the requisite preliminary showing with respect to Rule 23(a)'s typicality requirement. Cases in the Second Circuit have held that the typicality requirement is met where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Brady v. Top Ships Inc., 324 F.Supp.3d 335, 350 (E.D.N.Y. 2018) (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)). Like other members of the putative class, Handal asserts "that Defendants violated the Exchange Act by issuing false and misleading statements about Tenet Fintech's business." Handal Mem. at 8; see Handal Opp. at 3 ("Mr. Handal's claims are also typical of other class members because his claims arise from the same legal

8

theories and same nucleus of fact."). No opposition to Handal's motion has been filed with this Court and, thus, no dispute exists between the remaining movants (or the named plaintiff or any member of the putative class) that Handal's claims arise out of the same course of events as those set forth in the Complaint. Handal, as the movant with the largest financial interest in this litigation, has therefore preliminarily demonstrated typicality under Rule 23(a).

Handal has likewise preliminarily satisfied the adequacy requirement of Rule 23(a). The adequacy requirement is satisfied where: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." Kaplan v. Gelfond, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) (citations omitted). Based on Handal's submissions, the Court is satisfied (as discussed *infra*) that Handal's retained counsel, Rosen Law, is experienced, competent, and well-qualified to conduct the class action securities litigation at hand. Handal maintains a sufficient financial interest in the outcome of the case to vigorously advocate on behalf of the class and, in his papers, he denies the existence of any conflicts of interest with absent class members. See Handal Mem. at 8-9. As no conflict is otherwise apparent to the Court, Rule 23(a)'s adequacy requirement has been met for these purposes.

### D. Rebutting the Statutory Presumption

With respect to the second stage of the inquiry, neither Peterson nor Dominique, nor any other member of the purported class, has raised any opposition to Handal's motion for appointment as lead plaintiff. See Peterson Notice at 2; Dominique Notice at 2. In addition, nothing in the record rebuts the presumption that Handal would fairly and adequately protect

the interests of the class, nor is there any reason to believe that Handal is subject to any unique defense that would otherwise render him incapable of adequately representing the class. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, the PSLRA's statutory presumption has not been rebutted.

## II. Approval of Lead Counsel

The PSLRA also specifies the procedure to be followed for approving lead counsel in putative class actions brought under federal securities laws. Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). As is evident from the statutory language, "the lead plaintiff's right to select and retain counsel is not absolute - the court retains the power and the duty to supervise counsel selection and counsel retention." City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc., CV 08-1418 (LDW) (ETB), 2009 WL 10709107, at *5 (E.D.N.Y. Mar. 9, 2009) (quoting In re Luxottica Grp., S.p.A. Sec. Litig., No. 01–CV–3285, 2004 WL 2370650, at *3 (E.D.N.Y. Oct. 22, 2004)). Nevertheless, "[t]he Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class." Rauch v. Vale S.A., 378 F.Supp.3d 198, 211 (E.D.N.Y. 2019) (citations omitted); Brady, 324 F.Supp.3d at 352 ("Courts have correctly found that the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (citations and internal quotations omitted)). The PSLRA thus makes clear that courts should interfere with the lead plaintiff's selection and retention of

counsel solely to "protect the interests of the class[.]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); see Rauch, 378 F.Supp.3d at 211.

Here, Handal has selected Rosen Law as lead counsel and seeks this Court's approval of that selection. In assessing a plaintiff's selection and retention of counsel to represent a purported class, courts give significant weight to counsel's experience. See Rauch, 378 F.Supp.3d at 211. Handal has demonstrated that Rosen Law has substantial experience litigating securities fraud class actions. In support of his request to appoint Rosen Law as lead counsel, Handal has submitted Rosen Law's 53-page resume, which provides a detailed description of the educational backgrounds and legal experience of 20 attorneys employed at Rosen Law. See Rosen Law Resume (Jan. 18, 2022) at 2-10, DE #9-4. Rosen Law's resume also lists numerous cases in which it has served, and/or is currently serving, as lead counsel in securities class actions, both in the Eastern District of New York and elsewhere. See id. at 10-54; see also Handal Mem. at 10. No purported class members have offered any reason why Rosen Law would be unfit to serve as lead counsel in this securities case. Moreover, other courts in the Eastern District of New York have concluded that, based on Rosen Law's extensive experience, the firm is qualified to serve as lead counsel in securities law class actions. See, e.g., Salim v. Mobile TeleSystems PJSC, 19-CV-1589 (AMD)(RLM), 2019 WL 11095253, at *6 (E.D.N.Y. Sept. 11, 2019); *In re* Blue Apron Holdings, Inc. Sec. Litig., 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017); Bensley v. FalconStor Software, Inc., 277 F.R.D. 231, 242 (E.D.N.Y. 2011). Finally, Handal represents that Rosen Law "has been actively researching Movant's and Class Plaintiffs' claims, including commencing this action [on behalf of plaintiff van Boxtel], reviewing publicly available

11

financial and other documents while gathering information in support of the claims against Defendants." Handal Mem. at 10. Accordingly, the Court approves Handal's selection of Rosen Law to serve as lead counsel.

## CONCLUSION

For the foregoing reasons, this Court appoints Handal as lead plaintiff and approves Rosen Law as lead counsel. This Court also denies Peterson and Dominique's motions as moot.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**February 10, 2022**

*/s/* ***Roanne L. Mann***
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**