**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEJANDRO HANDAL and DONALD DOMINIQUE, Individually and on Behalf of All Others Similarly Situated, | Case No: 1:21-cv-06461-PKC-RLM |
| Plaintiff, | **AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | JURY TRIAL DEMANDED |
| TENET FINTECH GROUP INC. F/K/A PEAK FINTECH GROUP INC., JOHNSON JOSEPH, and JEAN LANDREVILLE, | |
| Defendants. | |

Lead Plaintiff Alejandro Handal and named plaintiff Donald Dominique ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants Tenet Fintech Group Inc. f/k/a Peak Fintech Group Inc. ("Tenet" or "Company"), Johnson Joseph ("Joseph"), and Jean Landreville ("Landreville" and together with Tenet and Joseph "Defendants"), allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through their attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding Tenet, and information readily obtainable on the internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased publicly traded Tenet common shares on NASDAQ and/or the OTC market ("Class") between September 3, 2021, and October 13, 2021, inclusive ("Class Period"). Plaintiffs bring the following claims on behalf of:

a.      a Sub-Class of all purchasers of Tenet commons shares between September 3, 2021, and September 20, 2021, inclusive, pursuant or traceable to Tenet's Registration Statement filed on Form 40-F on September 3, 2021 ("Registration Statement" or "Form 40-F"), alleging violations of Section 11 and Section 15 under the Securities Act of 1933 ("Securities Act") in connection with Tenet's registration eligibility ("Sub-Class I");

b.       a Sub-Class of all purchasers between September 3, 2021 and October 13, 2021 inclusive, pursuant or traceable to Tenet's Registration Statement filed on the Registration Statement, alleging violations of Section 11 and Section 15 under the Securities Act in connection with Tenet's acquisitions of the Asia Synergy Financial Capital ("ASFC") and Jinxiaoer Technology Ltd. ("Jinxiaoer Company") ("Sub-Class II");

c.      a Sub-Class of all purchasers between September 3, 2021 and October 13, 2021 inclusive, alleging violations of Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") in connection with Tenet's acquisitions of ASFC and Jinxiaoer ("Sub-Class III"); and

d.      a Sub-Class of all purchasers between September 14, 2021 and October 13, 2021 inclusive, alleging violations of Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") in connection with Tenet's asset acquisition of Huayan Kun Tai Technology Company Ltd. ("Huayan") ("Sub-Class IV").

2.      Tenet is a Canadian company with its primary operations in China. On September 3, 2021, Tenet filed with the United States Securities Exchange Commission ("SEC") an application for the registration of its common stock on Form 40-F. The Registration Statement states that "[t]he Company is filing this Form 40-F registration statement with the SEC to register its class of common shares under Section 12(b) of the Exchange Act." The Registration Statement continues that "[p]ursuant to the requirements of the Exchange Act, the Registrant certifies that it meets all of the requirements for filing on Form 40-F and has duly caused this Registration Statement to be signed on its behalf by the undersigned, thereunto duly authorized."

3.      Based on this filing, in a letter to SEC's Division of Corporation Finance that it filed on September 8, 2021, Eun Ag Choi, Vice President of Listing Qualifications for Nasdaq ("Choi"), wrote, "[t]his is to certify that on September 3, 2021 The Nasdaq Stock Market LLC (the "Exchange") received from Peak Fintech Group Inc. (the "Registrant") a copy of the Registrant's application on Form 40-F 12(b) for the registration of the following security: Common Stock." Nasdaq continued that "[w]e further certify that the security described above has been approved by the Exchange for listing and registration," concluding that "[w]e understand that the Registrant is seeking immediate acceleration of the effective date of registration, and we hereby join in such request."

4.      In a September 7, 2021, news release, Tenet "announced that the Nasdaq Stock Market LLC has approved the listing of the Company's common shares on the Nasdaq Capital Market ('NASDAQ')." According to Defendant Joseph, "[t]he listing of our shares on the NASDAQ represents a significant milestone for the Company as we look to expand our operations beyond China and share our story with a broader network of investors." The Company concluded that "Peak's common shares will begin trading on the NASDAQ on Thursday September 9, 2021

3

under the symbol 'TNT'. The Company's common shares will continue to trade on the OTCQX under the symbol 'PKKFF' until market close on Wednesday September 8, 2021."

5.      Days later, however, on September 21, 2021, at 8:00 a.m., Tenet issued a news release, "announc[ing] that it has been advised by the Nasdaq Capital Market ('NASDAQ') that the US Securities and Exchange Commission (the 'SEC') is still in the process of reviewing the Company's registration statement, known as Form 40-F." Tenet added, "[a]s the review process is taking longer than originally expected, trading of Peak's common shares on the NASDAQ has been temporarily halted until the SEC completes its review and issues the notice of effectiveness of the Company's Form 40-F."

6.      Shares of Tenet did not trade on NASDAQ from the opening on September 21, 2021, through the close on September 29, 2021.

7.      In a September 28, 2021, letter to the SEC, Choi wrote, "[b]y letter dated September 8, 2021, we advised you that The Nasdaq Stock Market LLC (the "Exchange") had received Form 40-F 12(b) from Peak Fintech Group Inc. for registration of its Common Stock. . . ." Choi continued that NASDAQ Exchange "had approved the Security for listing and registration upon official notice of issuance. The Security began trading on the Nasdaq Capital Market," Choi stated, "on September 9, 2021." Choi then stated that on September 20, 2021, NASDAQ Exchange "halted trading" of Tenet common stock because it became aware "the Division of Corporation Finance has not yet accelerated the effective date of the Company's Form 40-F 12(b) registration statement." Choi concluded that Nasdaq "withdr[e]w [its] earlier certification of approval."

8.      Also in a September 28, 2021, letter to the SEC, Defendant Joseph wrote on Tenet's behalf "respectfully request[ing] that the [SEC] consent to the withdrawal of the

4

Registration Statement on Form 40-F . . . . The Company," Joseph continued "reserves the right to resubmit the registration Statement at a future date. In the absence of this withdrawal application, in accordance with Section 12(d) of the Exchange Act, the Registration Statement would automatically become effective 30 days after the initial filing of the Form 40-F Registration Statement." Defendants Joseph concluded, that as a result, "the Company respectfully requests that the above referenced Form 40-F Registration Statement be withdrawn effective as of the date hereof or at the earliest practical date but in any event prior to October 3, 2021."

9.      On September 29, 2021, Tenet revealed that Form 40-F had failed to comply with the SEC's risk disclosure guidance regarding its Chinese operations. When NASDAQ delisted Tenet, relegating its shares to trade on the over-the-counter ("OTC") market,  Tenet's share price fell 17%.

10.     In addition to failing to comply with the SEC's disclosure guidance, Tenet's Form 40-F also misleads about and omits material facts that Tenet was duty bound to disclose accurately. The Form 40-F represents that Tenet acquired 70% equity interest of Jinxiaoer Company, a Chinese company that operated a financial lending app "the Jinxiaoer Platform" and touted the significant financial benefits the Jinxiaoer Platform would bring to Tenet. In truth, Tenet never acquired either an equity interest in Jinxiaoer Company or the Jinxiaoer Platform.

11.     The Form 40-F also represents that Tenet owns 51% equity of ASFC and lists it as one of the key Tenet subsidiaries. In truth, Tenet does not own any equity interest in ASFC. Tenet later claimed that it owns the 51% equity via a secret nominee shareholder agreement to circumvent Chinese regulatory restrictions. Official Chinese government company records, however, show that Tenet's continuing claim to ASFC equity ownership is false.

12.     During the Class Period, Tenet also announced that it acquired all assets from Huayan, including its propriety insurance brokering website "Heartbeat." But the official Chinse government company records and one of China's largest business databases—Qixinbao—show that Huayan does not own Heartbeat. Neither did Huayan transferred any assets to Tenet.

13.     When the market analyst firm Grizzly Reports published a Grizzly Report revealing Tenet's false and misleading statements, Tenet's stock price plunged by 17.47% the same day.

14.     Tenet immediately issued a response claiming the Grizzly Report failed to conduct minimum research and attempting to clarify the issues that Grizzly Report exposed. But as Grizzly's Rebuttal Report and relevant business records show, Tenet's response added nothing but more lies. Upon the publication of the Grizzly Rebuttal Report, Tenet's share prices dropped 6%, further damaging investors.

## JURISDICTION AND VENUE

15.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)) because the alleged misstatements entered and the subsequent damages took place in this judicial district.

18.     In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## **PARTIES**

19.     Lead Plaintiff Alejandro Handal ("Handal"), as set forth in the certification previously filed with this Court and incorporated by reference herein, acquired Tenet common stock pursuant to the Registration Statement and at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures. Between September 14, 2021, and September 15, 2021, Handal purchased 72,598 shares of Tenet common stock at prices ranging from $7.84-$9.65 per share.

20.     Named plaintiff Donald Dominique purchased Tenet common stock at artificially inflated prices during the Class Period and was damaged thereby. On September 9, plaintiff Dominque purchased 910 shares of Tenet common stock from Nasdaq at prices ranging from $10.28-10.5 per share. His PSLRA certification is attached as Exhibit 1.

21.     Defendant Tenet was incorporated as Java Capital Inc. in Canada on May 13, 2008 and its headquarters is located at 550 Sherbrooke West, Suite 265, Montreal A8 H3A 1B9. Tenet's former company names included Peak Positioning Technologies Inc. and Peak Fintech Group Inc. / Groupe Peak Fintech Inc. On October 27, 2021, the Company changed its name to Tenet Fintech Group Inc. Tenet's common shares started to trade on Canadian Stock Exchange on October 23, 2015 under the ticker symbol "PKK." From September 9, 2021 to September 20, 2021, Tenet's common shares trade on Nasdaq under the tick symbol "TNT." Tenets common shares currently also trade over-the-counter ("OTC") in the U.S. under the ticker symbol "PKKFF."

22.     Defendant Johnson Joseph ("Joseph") has served as the Company's Chief Executive Officer ("CEO"), President & Director since February 8, 2011 and throughout the Class Period.

23.     Defendant Jean Landreville ("Landreville") has served as the Company's Chief Financial Officer ("CFO") since January 31, 2018 and throughout the Class Period.

24.     Defendants Joseph and Landreville are collectively referred to herein as the "Individual Defendants."

25.     Each of the Individual Defendants:

    a.  directly participated in the management of the Company;

    b.  was directly involved in the day-to-day operations of the Company at the highest levels;

    c.  was privy to confidential proprietary information concerning the Company and its business and operations;

    d.  was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    e.  was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    f.  was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

    g.  approved or ratified these statements in violation of the federal securities laws.

26.     Tenet is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

27.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Tenet under *respondeat superior* and agency principles.


## SUBSTANTIVE ALLEGATIONS UNDER SECURITIES ACT [1]

### Tenet's Short-Lived Trading on NASDAQ

28.     Tenet, through its subsidiaries, operates as an IT portfolio management company in China. It purports to own a group of innovative artificial intelligence ("AI") and financial technology companies in China. Tenet's subsidiaries purportedly provide various analytics and AI-based services to financial institutions and businesses through its trademarked "Business Hub", an allegedly ecosystem where data analysis and AI are used to facilitate transactions among its members. Tenet's common stock started trading on Canadian Stock Exchange on October 23, 2015, under the ticker symbol "PKK."

29.     On September 3, 2021, Tenet filed with the SEC and NASDAQ the Registration Statement on Form 40-F, a form for companies incorporated or organized under the laws of Canada or any Canadian province or territory to register securities with the SEC pursuant to Section 12(b) of the Exchange Act.

_____

[1] Plaintiffs specifically disclaim any allegation of fraud, recklessness or intentional misconduct concerning allegations under Securities Act.

30.     NASDAQ approved Tenet's application and allowed Tenet's common stock to trade on the NASDAQ Capital Market starting from September 9, 2021, under the ticker symbol "TNT".

31.     On September 20, 2021, only 11 days after Tenet's common stock started trading, NASDAQ suddenly halted the trading. In its September 28, 2021letter to the SEC, NASDAQ explained that given SEC had not yet accelerated the effective date of Tenet's Form 40-F, NASDAQ halted trading of Tenet's common stock and withdrew its earlier certification of approval.

32.     On September 29, 2021, in its letter to the SEC withdrawing its Form 40-F, Tenet disclosed for the first time that its removal from NASDAQ resulted from the Company's failure to comply with SEC's "recent disclosure guidance" for companies either based in China or with the majority of their operations in China ("SEC Guidance")  that the SEC had first published on November 23, 2020, almost a year before Tenet's Form 40-F filing. The SEC Guidance requires disclosure of material risks specifically related to companies' operations in China in light of China's restrictions on access to information by non-Chinese people and institutions and on investment in Chinese companies by non-Chinese people and institutions.

33.     On September 30, 2021, NASDAQ removed Tenet common stock from its exchange, relegating it to trade in the United States on the OTC market under the ticker symbol "PKKFF." As a result of the delisting from NASDAQ, Tenet's share price fell $1.59, or over 17%, from closing at $9.09 on September 20, 2021—the last trading day on Nasdaq, to open at $7.50 on September 30, 2021.

**Defendants Misrepresented the Jinxiaoer Acquisition**

34.　　On December 3, 2019, Tenet announced that it has acquired from Jinxiaoer Company the popular Jinxiaoer loan brokerage and commission paying platform ("Jinxiaoer Platform")—the purported one of the most popular, and fastest growing, lead-generating and loan-commission paying apps in all of China. [2] Joseph boasted this acquisition as "a major achievement for us and should benefit every one of our subsidiaries," because "It's not only expected to bring considerably more business to [Tenet], but also gives us an opportunity to expand our services throughout China." According to Tenet's announcement, Tenet would pay $600,000 in cash and $800,000 worth of Tenet common shares over a period of 18 months for a 70% equity stake in Jinxiaoer.

35.　　Tenet's September 3, 2021 Form 40-F Registration Statement, Exhibit 99.172 (the Annual Information Form Dated May 6, 2021 for the Financial Year Ended December 31, 2020) reiterates that Tenet was to acquire "70% equity stake in Jinxiaoer" over a period of 18 months under the November 7, 2019 purchase agreement. The Form 40-F further updates on its newly acquired Jinxiaoer that in 2019 Tenet "decided to revise Jinxiaoer's revenue model" and "spent a large portion of the [fourth] quarter on the development and implementation of features to better meet its clients' needs and discussed the best ways to integrate the Jinxiaoer loan brokerage platform into the Lending Hub."

36.　　But the market soon discovered that Tenet's representations were false.

37.　　On October 4, 2021, market analyst Grizzly Reports published a report ("Gizzly

---

[2]　　　https://www.newsfilecorp.com/release/50332/Peak-Acquires-Patented-Loan-Brokerage-Platform-with-over-40000-Registered-Reps

Report", attached hereto as Exhibit 2), exposing, among other things, that Jinxiaoer is a fake transaction. The Grizzly Report reveals that Tenet does not own any equity of Jinxiaoer Company and Jinxiaoer Platform and Jinxiaoer website are inaccessible. Upon the publication of the Grizzly Report, Tenet's stock price plunged by 17.47% with unusually high daily trading volume, from $7.4/share at the opening to close at $6.19 on October 4, 2017.

38.     The next day, on October 5, 2021, CEO Defendant Joseph responded to the Grizzly Report in a question-and-answer interview with StockFam—an investor information platform— and published the text version of the interview ("Q&A Response", attached as Exhibit 3). In the Q&A Response, Joseph attempted to justify this transaction as an asset purchase, not an equity transaction, and represented that Tenet had repurposed the Jinxiaoer Platform. Joseph stated:

> We're after the assets, not the company. When we acquired Jinxiaoer's assets, the plan was to roll everything over into a new subsidiary. But we eventually decided that it would be best to revamp the software and the business model to better fit into our Business Hub. So right now, we're using Jinxiaoer's technology, but not through a standalone subsidiary. The app is no longer available on app stores in its original version because it's no longer being used for those original purposes. It's now exclusively used to drive traffic and facilitate specific types of transactions on our Hub.

39.     On October 13, 2021, Grizzly published a rebuttal report to Tenet's Q&A Response ("Rebuttal Report", attached as Exhibit 4) challenging Joseph's attempt to rewrite history by showing the specific initial equity purchase announcement made by Tenet.

40.     Tenet's representations of its Jinxiaoer acquisition were false.

41.     China's National Enterprise Credit Information Publicity System ("NECIPS")[3]

---

[3] NECIPS is an official Chinese government database of all business entities formed in China.

corporate report of Jinxiaoer Company shows that six persons (including 2 companies and 4 individuals) have equity ownership of Jinxiaoer Company. None of them are related to Tenet or Tenet's subsidiaries. The largest owner, an induvial called Gangtie Li, owns 61.667% of Jinxiaoer Company, not even 70% that Tenet claims to purchase. Jinxiaoer's NECIPS report is attached hereto as Exhibit 5.

42.     Additionally, searches of the Jinxiao Platform—the asset that Tenet claims has been acquired by Tenet, show that Tenet has never owned the Jinxiaoer Platform. Anfensi.com, a website for downloading Android apps, shows that Jinxiaoer Company owned Jinxiaoer Platform and updated the Jinxiaoer Platform on March 31, 2020.[4] Appadvice.com shows that a version of the Jinxiaoer Platform, released on December 4, 2021 and last updated on January 4, 2022, is still owned by Jinxiaoer Company, not Tenet.[5] The iPhone app store that appadvice.com directs for downloading shows that both the seller and the copyright owner of the latest January 4, 2022 version of the Jinxiaoer Platform is Jinxiaoer Company, not Tenet.[6]

**Tenet Does Not Own ASFC—A Key Tenet Subsidiary**

43.     On December 7, 2017, Tenet announced that with Tenet's consent, Jiu Dong Ltd. ("Jiu Dong")[7], Tenet's financial and strategic partner, was to acquire YaDong Ltd. (later renamed as Asia Synergy Financial Capital ("ASFC")) in the coming days and Tenet was to then acquire a 51% stake in ASFC for a total investment of CAD$10.2M immediately following the closing of

---

[4] https://www.anfensi.com/down/279102.html
[5] https://appadvice.com/app/e9-87-91-e5-b0-8f-e4-ba-8c/1562096803
[6] https://apps.apple.com/us/app/id1562096803
[7] Jiudong's full name is Jiangsu Jiudong Industrial Development Co., Ltd.

the financing on or around December 15, 2017.[8]

44.     Tenet's September 3, 2021 Form 40-F Registration Statement, Exhibit 99.241 (Management's Discussion and Analysis for the three and six-month periods ended June 30, 2021 and June 30, 2020) listed ASFC as one of Tenet's key subsidiaries.[9] Exhibit 99.240 (Tenet's Interim financial statements for the three and six-month periods ended June 30, 2021 and 2020) shows that Tenet owns 51% ownership and voting right of ASFC and consolidated ASFC's financials within Tenet's consolidated financial statements. [10]

45.     But the Grizzly Report reveals that Tenet has never owns ASFC. In fact, five persons (including two companies and three individuals) own 35%, 20%, 15%, 15% and 15% ownership of ASFC. Wuxi Aorong, a subsidiary that Tenet claims owns 51% ownership of ASFC, does not own ASFC.

46.     In the Q&A Response, Joseph explained, without any supporting documents, that the two company shareholders of ASFC and two of the three ASFC induvial shareholders secretly hold 51% ownership on Tenet's behalf pursuant to a nominee shareholder agreement to circumvent Chinese regulatory restrictions. Paradoxically, Joseph claimed that Grizzly could have "easily verified [such nominee shareholder arrangement] with a minimum amount of research" despite Tenet's admitted effort of hiding such clandestine arrangement—if it even existed.

47.     The Grizzly Rebuttal Report questions who the nominee shareholders are given the company shareholders' holdings do not add up to 21%.

_____

[8]   https://www.newsfilecorp.com/release/31059/Peak-and-Jiu-Dong-to-Acquire-Fully-Licensed-Financial-Shell
[9] https://www.sec.gov/Archives/edgar/data/1558924/000106299321008186/exhibit99-241.htm
[10] https://www.sec.gov/Archives/edgar/data/1558924/000106299321008186/exhibit99-240.htm

48.     Tenet's representations regarding ASFC were false.

49.     <u>First</u>, the represented date of ASFC's formation is false. The NECIPS corporate report of ASFC shows that five founding shareholders founded ASFC[11] on May 14, 2018, meaning that it did not exist on December 7, 2017 when Tenet announced its acquisition. ASFC's NECIPS report is attached hereto as Exhibit 6.

50.     <u>Second</u>, contrary to Tenet's initial announcement, Ouya Huada Environmental Protection Group Ltd ("Huada") is not ASFC's founding shareholder and Jiudong has never acquires 100% of ASFC. According to the NECIPS corporate report of ASFC in Exhibit 6, the five ASFC founding shareholders are Yixing Langyi Environmental Protection Technology Co., Ltd. ("Yixing Langyi", owning 35% ASFC equity), Wuxi Jiajun Jewelry Trading Co., Ltd. ("Wuxi Jiajun", owning 20% ASFC equity), Kelong Chen ("Chen", owning 15% ASFC equity), Chusheng Zhou ("Zhou", owning 15% ASFC equity) and Changsheng Zhuo ("Zhuo", owning 15% ASFC equity). The shareholders and their respective holdings have never changed since ASFC's formation. The Qixinbao database[12] shows that Chen, Zhou and Zhuo are also owners and principles of Jiudong, Tenet's partner, as Joseph claimed. (Jiudong's Qixinbao record is attached hereto as Exhibit 7.) According to the Qixinbao database, Chen also owns 55% equity of and hence

_____

[11] ASFC's Chinese name has always been 宜兴市亚东科技小额贷款有限公司 or Yixing Yadong Technology Micro-loan Co., Ltd.— "Yadong Ltd." as Tenet called—since its formation.

[12] According to Qinxinbao's own description, Qixinbao is the most comprehensive Chinese enterprise information database that covers 230 million industrial and commercial registered enterprises, public institutions, professional service institutions, non-profit institutions and organizations in China. It congregates almost in real time public information filed by or relating to companies in China, including company's business information, court judgments, regulatory actions, intellectual property information from the official websites of governmental and judicial institutions, such as National Enterprise Credit Information Publicity System, China Judgment Online and the China National Intellectual Property Administration database.

controls Wuxi Jiajun. (Wuxi Jiajun's Qixinbao record is attached hereto as Exhibit 8.) But according to Yixing Langyi's Qixinbao record, attached hereto as Exhibit 9, Yixing Langyi—the largest shareholder of ASFC—has no relationship with Jiudong. Therefore, the related parties of Jiudong collectively own only 65% equity of ASFC. This ASFC ownership structure contradicts Tenet's representation that Jiudong purchased the entire ownership of ASFC from Huada.

51.     Third, based on the Qixinbao database as shown in Exhibits 7, 8 and 9, Yixing Langyi is not a Jiudong related party. Given Tenet's representation that it holds 51% of ASFC through Jiudong's partnership, Joseph's representation that the two ASFC corporate shareholders hold 21% ASFC equity on behalf of Tenet cannot align with the fact that Wuxi Jiajun, the only corporate related party of Jiudong, owns only 20% ASFC equity.

52.     Fourth, even if Tenet indeed owns 51% ASFC equity via a purported nominee agreement, Tenet failed to disclose the material risks associated with such secret arrangement circumventing Chinese law according to the SEC Guidance requiring disclosure of the material risks of operating in China, resulting in its removal from Nasdaq.

### DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS CONCERNING THE REGISTRATION STATEMENT

**Regarding Registration Eligibility**

53.     On September 3, 2021, Tenet filed Form 40-F Registration Statement with the SEC to apply for registering its common stock. The Registration Statement states that "[p]ursuant to the requirements of the Exchange Act, the Registrant certifies that it meets all of the requirements for filing on Form 40-F and has duly caused this Registration Statement to be signed on its behalf by the undersigned, thereunto duly authorized."

54.     The Form 40-F was materially false and misleading. In a September 21, 2021, press

release, Defendants publicly admitted the material falsity of the Form 40-F and that NASDAQ halted its trading because SEC was "still in the process of reviewing the Company's registration statement, known as Form 40-F, [and] the review process is taking longer than originally expected." In addition, on September 28, 2021, Tenet issued a follow-on press release, announcing its withdrawal of Form 40-F "while it works to comply with recent [SEC] disclosure guidance" with respect to its Chinese operations. But the "recent disclosure guidance" was in fact published on November 23, 2020, nearly a year before Tenet filed Form 40-F. Tenet's Form 40-F was deficient for failing to comply with the SEC Guidance that was published almost a year ago, resulting in a material risk that SEC would not approve Tenet's application for registering its common shares.

**Regarding the Jinxiaoer Acquisition**

55.     Tenet's September 3, 2021 Form 40-F, Exhibit 99.172 (the Annual Information Form Dated May 6, 2021 for the Financial Year Ended December 31, 2020) states that Tenet was to acquire "70% equity stake in Jinxiaoer" over a period of 18 months under the November 7, 2019 purchase agreement. The Form 40-F states that Tenet "decided to revise Jinxiaoer's revenue model" and "spent a large portion of the [fourth] quarter on the development and implementation of features to better meet its clients' needs and discussed the best ways to integrate the Jinxiaoer loan brokerage platform into the Lending Hub."

56.     These statements were materially false and misleading because Defendants failed to disclose that (i) Tenet does not own any equity of Jinxiaoer Company; (ii) Tenet does not own the Jinxiaoer Platform.

**Regarding ASFC**

57.    Tenet's September 3, 2021 Form 40-F, Exhibit 99.241 (Management's Discussion and Analysis for the three and six-month periods ended June 30, 2021 and June 30, 2020) lists ASFC as one of Tenet's key subsidiaries. Exhibit 99.240 (Tenet's Interim financial statements for the three and six-month periods ended June 30, 2021 and 2020) represents that Tenet owns 51% ownership and voting right of ASFC and consolidated ASFC's financials within Tenet's consolidated financial statements.

58.    These statements were materially false and misleading because Defendants failed to disclose that (i) Tenet does not own 51% ASFC equity; (ii) even if Tenet owns 51% ASFC equity via a purported nominee agreement, Tenet failed to disclose the material risks associated with such secret arrangement circumventing Chinese law according to the SEC Guidance requiring disclosure of the material risks of operating in China, resulting in its removal from Nasdaq.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

59.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and Sub-Class I and Sub-Class II. Excluded from the Class are Defendants, the officers and directors of Tenet, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

60.    The members of Sub-Class I and Sub-Class II are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe there are thousands of members in the proposed Class. Record owners and other members of Sub-Class I and Sub-Class II may be identified from records maintained by Tenet or its transfer agent and may

be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

61.     Plaintiffs' claims are typical of the claims of the members of Sub-Class I and Sub-Class II, as all members of Sub-Class I or Sub-Class II are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

62.     Plaintiffs will fairly and adequately protect the interests of the members of Sub-Class I and Sub-Class II and have retained counsel competent and experienced in class and securities litigation.

63.     Common questions of law and fact exist as to all members of respective Sub-Classes I and II and predominate over any questions solely affecting individual members of Sub-Classes I and II. Among the questions of law and fact common to respective Sub-Classes I and II are:

      a.  whether Defendants violated the federal securities laws;

      b.  whether Form 40-F misrepresented material facts;

      c.  whether Form 40-F omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

      d.  whether the members of the respective Sub-Classes I and II have sustained damages and, if so, what is the proper measure of damages.

64.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Sub-Class I or Sub-Class II members may be relatively small, the expense and burden of individual litigation make it impossible for members of respective Sub-

Class I and Sub-Class II to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SECURITIES ACT CLAIMS

### COUNT I
### Violations of Section 11 of the Securities Act
### Against All Defendants Concerning
### the Registration Statement

65.     Plaintiffs repeat and re-allege the allegations set forth in ¶¶ 1-64 as if fully set forth herein. Plaintiffs further disclaim any allegation of fraud, recklessness or intentional misconduct.

66.     This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

67.     The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

68.     The Defendants named in this Count signed the Registration Statement and/or was a director at the time of the filing of the Registration Statement.

69.     Defendants are strictly liable to Plaintiffs and the Class for the misstatements and omissions in the Registration Statement.

70.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

71.     Plaintiffs acquired Tenet common shares pursuant to the Registration Statement.

72.     At the time of their purchases of Tenet common shares, Plaintiffs and members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

73.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Registration Statement that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Registration Statement. It is therefore timely.

## COUNT II

### Violations of Section 15 of the Securities Act
### Against the Individual Defendants Concerning
### the Registration Statement

74.     Plaintiffs repeat and re-allege the allegations set forth in ¶¶ 1-73, as if fully set forth herein.  Plaintiffs further disclaim any allegation of fraud, recklessness or intentional misconduct.

75.     This cause of action is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o against the Individual Defendants, each of whom was a control person of Tenet during the relevant period.

76.      The Individual Defendants were in positions to control and did control, the false and misleading statements and omissions contained in the Registration Statement.

77.     None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were accurate and complete in all material respects. Had they exercised reasonable care, they would have known of the material misstatements and omissions alleged herein.

78.     Plaintiffs and the Class have sustained damages. The value of Tenet common shares has declined substantially due to the Securities Act violations alleged herein.

79.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Registration Statement that should have been made and/or corrected

through the exercise of reasonable diligence, and within three years of the effective date of the Registration Statement. It is therefore timely.

### SUBSTANTIVE ALLEGATIONS UNDER SECURITIES EXCHANGE ACT

**Tenet's Short-Lived Trading on Nasdaq**

80.     Tenet, through its subsidiaries, operates as an IT portfolio management company in China. It purports to own a group of innovative artificial intelligence ("AI") and financial technology companies in China. Tenet's subsidiaries purportedly provide various analytics and AI-based services to financial institutions and businesses through its trademarked "Business Hub", an allegedly ecosystem where data analysis and AI are used to facilitate transactions among its members. Tenet's common stock started trading on Canadian Stock Exchange on October 23, 2015, under the ticker symbol "PKK."

81.     On September 3, 2021, Tenet filed with the Securities Exchange Commission ("SEC") and Nasdaq a registration statement on Form 40-F, a form for companies incorporated or organized under the laws of Canada or any Canadian province or territory to register securities with the SEC pursuant to Section 12(b) of the Exchange Act.

82.     Nasdaq approved Tenet's application and allowed Tenet's common stock to trade on the Nasdaq Capital Market starting from September 9, 2021, under the ticker symbol "TNT".

**Defendants Misrepresented Its Huayan Asset Acquisition**

83.     On September 14, 2021, Tenet announced[13] that it acquired the assets of Huayan Kun Tai Technology Company Ltd. ("Huayan"), a company in Beijing, China that operated

---

[13]     https://www.prnewswire.com/news-releases/peak-fintech-acquires-heartbeat-insurance-platform-and-brings-analytics-and-ai-expertise-to-insurance-industry-301376176.html

primarily through its proprietary "Heartbeat" (https://www.happysalers.com) insurance product management and brokerage platform. Tenet stated that all of Huayan's assets, including the Heartbeat platform, its employees and its operations would be transferred to Peak's Xinxiang Technologies Ltd. subsidiary ("Xinxiang"). Tenet touted this purchase as "add[ing] significant value to its Business Hub. By gaining entry to the insurance industry through the acquisition of the Heartbeat platform and integrating it to the Business Hub, [Tenet] believes it's in better position than ever to continue to influence various aspects of B2B transactions in China."

84.     Tenet's representations of its asset acquisition from Huayan were false.

85.     On October 4, 2021, Gizzly Report exposed the $30 million Huayan asset transaction as fake because Huayuan does not even own the primary operation platform—Heartbeat—that Tenet claimed Huayan owned. The Grizzly Report reveals that according to the database of China's Ministry of Industry and Information Technology ("MIIT")[14], a third-party company Beijing Huike Hulian Technology Ltd. ("Beijing Huike") owns the Heartbeat website and filed the 2021 annual report for the website on March 22, 2021. The Information System Security Level Protection certificate issued by MPS on March 29, 2021 also shows that Beijing Huike owns the Heartbeat website. Grizzly's research further shows that Beijing Huike, not Huayan, filed an application for the resignation of the "用心保 Insurance Heartbeat" trademark—the mark (including the Heartbeat Chinese characters and the picture) that the Heartbeat website

---

[14] Under Chinese law, an internet content provider ("ICP") company in China must register the domain name (i.e. the website) that the company owns and operates must register the domain name with MIIT and China's Ministry of Public Security ("MPS"). An ICP company is also required to file an annual report subject to the review of MIIT and MPS to maintain such domain name. An ICP company's domain name registration and annual filings are available for public search at the websites of MIIT and MPS.

displays prominently as its signature. The Grizzly Report confirmed that an individual named Kai Cui solely owns Beijing Huike according to China's company search database dismissing the possilbity that Beijing Huike might be a subsidiary of Huayan and hence Tenet acquired Huike's assets by acquiring Huayan.

86.     In Tenet's Q&A Response, in an attempt to explain away why Tenet paid $30 million to a company that does not own the assets at issues, Joseph, calling the Grizzly Report a "sloppy" research, stating:

> **Huayan and Huike are affiliated companies owned by the same people** and that's who our transaction is with. When we make acquisitions, we prefer to acquire the assets, IP, clients, management and employees. That way we get all the benefits and avoid any potential skeletons that may be hiding in the company. So before proceeding with this transaction, **we asked Huayan to transfer all its IP, including the Heartbeat platform, to Huike back in March**. Until that time, Huike was an empty shell owned by Kai Cui without even a bank account, so **we felt it would be a safe place to park the assets until we could finalize our deal with Huayan's shareholders. With the deal we have in place, we get all the assets from Huayan and Huike.** We're not idiots, no payment will be made, most of it in shares anyway, until the assets are transferred to our new subsidiary, which we created specifically to take over Huayan's operations.
>
> \*       \*       \*
>
> So it's normal that it hasn't generated any revenue. Again, this is just more sloppy research by this outfit. **The operating company leveraging the Heartbeat platform until this year was Huayan.**

87.     Grizzly immediately questioned the truth of Joseph's statement that "the operating company leveraging the Heartbeat platform until this year was Huayan." The Grizzly Rebuttal Report shows that based on the MIIT database, Huayan never owned or operated Heartbeat before the acquisition, let alone transferring Heartbeat to Beijing Huike.

88.     Tenet's representations of its Huayan asset acquisition were false.

89.     Contrary to Joseph's claim that "Huayan and Huike are affiliated companies owned by the same people," Huayan is owned by six individuals whereas Beijing Huike is owned by one individual. According to the NECIPS corporate reports, Kai Cui owns 100% of Beijing Huike since its formation of March 13, 2019; six individuals together own 100% of Huayan since March 22, 2019—Liang He 73.2%, Yu Dong 10%, Kai Cui 10%, Shenghui Guo 3%, Guoqi Jin 1.9% and Hailong Zha 1.9%. (The NECIPS corporate reports of Huayan and Beijing Huike are attached hereto as Exhibits 10 and11 respectively).  The only owner in common between the two companies is Kai Cui. But Kai Cui invested RMB 1million cash, not anything in kind or IP rights, in Huayan to become 10% owner of Huayan.

90.     More, contrary to Joseph's claim that Huayan transferred "all its IP, including the Heartbeat platform, to Huike back in March[, 2021]", Huayan never transferred any IP rights to Beijing Huike. According to the information obtained from Qixinbao, Huayan owns 35 IP rights, including 34 copyrights (all of which are software copyrights) and 1 Quality management system certification (ISO9001) (the certification was cancelled on October 25, 2021). Huayan registered its 34 software copyrights from September 2017 to February 2022 with each having its own unique registration number. Huayan's IP records obtained from Qixibao are attached hereto as Exhibit 12. Beijing Huike owns 31 IP rights, including 2 trademarks and 29 software copyrights. The two trademarks that Beijing Huike owns are the exact "用心保 Insurance Heartbeat" trademark that the Grizzly Report uncovered. Beijing Huike registered its 29 software copyrights from June 2021 to December 2021. Beijing Huike's IP records obtained from Qixibao are attached hereto as Exhibit 13. The "用心保 Insurance Heartbeat" trademark registration records obtained from China National Intellectual Property Administration is attached hereto as Exhibit 14. The set of IP rights

owned by Huayan does not overlap with the set of IP rights owned by Beijing Huike at all, meaning that Huayan never transferred any IP rights to Beijing Huike.

91.     Still further, contrary to Tenet's representation that Huayan was winding down its operations and transferring "all of Huayan's assets, including the Heartbeat platform, its employees and its operations" to Tenet's Xinxiang subsidiary in Tenet's September 14, 2021 acquisition announcement, according to Huanyan's IP records in Exhibit 12, Huayan still actively operated its business by registering 5 software copyrights during the post-acquisition period of November 24, 2021 to February 11, 2022. In the meanwhile, Xinxiang owns *no* IP rights, showing that Huayan never transferred any IP rights to Xinxiang. See Xinxiang's Qixinbao record attached hereto as Exhibit 15. In fact, Xinxiang is not even in operation and has been included by the Chinese government in the "List of Enterprises with Abnormal Operations" since September 14, 2021 because the Chinese government was unable to contact Xinxiang via its registered place of business. *See* Exhibit 15.

92.     Last, contrary to Tenet's representation that Huayan was transferring "all of Huayan's assets, including the Heartbeat platform" to Tenet's Xinxiang subsidiary in Tenet's September 14, 2021 acquisition announcement, Beijing Huike still owns the Heartbeat website and owns the "用心保 Insurance Heartbeat" trademark now. The MIIT database shows that Beijing Huike filed the annual report for the Hearbeat website with MIIT this year, which was approved by MIIT on February 7, 2022. (The MIIT record is attached hereto as Exhibit 16.) The MPS database shows that Beijing Huike filed an annual internet recordation with MPS for the Hearbeat website on February 25, 2022. (The MPS record is attached hereto as Exhibit 17.) Such information shows that Beijing Huike, not Tenet, still actively operates the Heartbeat website. Joseph's statement regarding the safety of this acquisition—"no payment will be made, most of it

in shares anyway"—shows Tenet's management just could not care less about diluting investors' equity damaging their investment by giving Tenet's shares away in a fake transaction.

**Defendants Misrepresented the Jinxiaoer Acquisition**

93.    On December 3, 2019, Tenet announced that it has acquired from Jinxiaoer Company the popular Jinxiaoer Platform—the purported one of the most popular, and fastest growing, lead-generating and loan-commission paying apps in all of China. [15] Joseph boasted this acquisition as "a major achievement for us and should benefit every one of our subsidiaries," because "It's not only expected to bring considerably more business to [Tenet], but also gives us an opportunity to expand our services throughout China." According to Tenet's announcement, Tenet would pay $600,000 in cash and $800,000 worth of Tenet common shares over a period of 18 months for a 70% equity stake in Jinxiaoer.

94.    Tenet's September 3, 2021 Form 40-F, Exhibit 99.172 (the Annual Information Form Dated May 6, 2021 for the Financial Year Ended December 31, 2020) reiterates that Tenet was to acquire "70% equity stake in Jinxiaoer" over a period of 18 months under the November 7, 2019 purchase agreement. The Form 40-F further updated on its newly acquired Jinxiaoer that in 2019 Tenet "decided to revise Jinxiaoer's revenue model" and "spent a large portion of the [fourth] quarter on the development and implementation of features to better meet its clients' needs and discussed the best ways to integrate the Jinxiaoer loan brokerage platform into the Lending Hub."

---

[15]      https://www.newsfilecorp.com/release/50332/Peak-Acquires-Patented-Loan-Brokerage-Platform-with-over-40000-Registered-Reps

95.     But the Grizzly Report reveals that Jinxiaoer is another fake transaction that Tenet conducted. The Grizzly Report reveals that Tenet does not own any equity of Jinxiaoer Company or Jinxiaoer Platform, and Jinxiaoer website are inaccessible.

96.     In the Q&A Response, Joseph, again, attempted to justify this transaction as an asset purchase, not an equity transaction, and represented that Tenet had repurposed the Jinxiaoer Platform. Joseph stated that

> We're after the assets, not the company. When we acquired Jinxiaoer's assets, the plan was to roll everything over into a new subsidiary. But we eventually decided that it would be best to revamp the software and the business model to better fit into our Business Hub. So right now, we're using Jinxiaoer's technology, but not through a standalone subsidiary. The app is no longer available on app stores in its original version because it's no longer being used for those original purposes. It's now exclusively used to drive traffic and facilitate specific types of transactions on our Hub.

97.     The Grizzly Rebuttal Report challenged Joseph's attempt to rewrite history by showing the specific initial equity purchase announcement made by Tenet.

98.     Tenet's representations of its Jinxiaoer acquisition were false.

99.     The NECIPS corporate report of Jinxiaoer Company shows that six persons (including 2 companies and 4 individuals) have equity ownership of Jinxiaoer Company. None of them are related to Tenet or Tenet's subsidiaries. The largest owner, an induvial called Gangtie Li, owns 61.667% of Jinxiaoer Company, not even 70% that Tenet claims to purchase. *See* Exhibit 5.

100.    Additionally, searches of the Jinxiao Platform—the asset that Tenet claims has been acquired by Tenet, show that Tenet has never owned the Jinxiaoer Platform. Anfensi.com, a website for downloading Android apps, shows that Jinxiaoer Company owned Jinxiaoer Platform

and updated the platform on March 31, 2020.[16] Appadvice.com shows that a version of the Jinxiaoer Platform, released on December 4, 2021 and last updated on January 4, 2022, is still owned by Jinxiaoer Company, not Tenet.[17] The iPhone app store that appadvice.com directs for downloading shows that both the seller and the copyright owner of the latest January 4, 2022 version of the Jinxiaoer Platform is Jinxiaoer Company, not Tenet.[18]

**Tenet Does Not Own ASFC—A Key Tenet Subsidiary**

101.     On December 7, 2017, Tenet announced that with Tenet's consent, Jiu Dong, Tenet's financial and strategic partner, was to acquire YaDong Ltd. (later renamed as ASFC) in the coming days and Tenet was to then acquire a 51% stake in ASFC for a total investment of CAD$10.2M immediately following the closing of the financing on or around December 15, 2017.[19]

102.     Tenet's September 3, 2021 Form 40-F, Exhibit 99.241 (Management's Discussion and Analysis for the three and six-month periods ended June 30, 2021 and June 30, 2020) listed ASFC as one of Tenet's key subsidiaries.[20] Exhibit 99.240 (Tenet's Interim financial statements for the three and six-month periods ended June 30, 2021 and 2020) shows that Tenet owns 51% ownership and voting right of ASFC and consolidated ASFC's financials within Tenet's consolidated financial statements.[21]

---

[16] https://www.anfensi.com/down/279102.html
[17] https://appadvice.com/app/e9-87-91-e5-b0-8f-e4-ba-8c/1562096803
[18] https://apps.apple.com/us/app/id1562096803
[19]   https://www.newsfilecorp.com/release/31059/Peak-and-Jiu-Dong-to-Acquire-Fully-Licensed-Financial-Shell
[20] https://www.sec.gov/Archives/edgar/data/1558924/000106299321008186/exhibit99-241.htm
[21] https://www.sec.gov/Archives/edgar/data/1558924/000106299321008186/exhibit99-240.htm

103.    But the Grizzly Report reveals that Tenet has never owns ASFC. In fact, five persons (including two companies and three individuals) own 35%, 20%, 15%, 15% and 15% ownership of ASFC. Wuxi Aorong, a subsidiary that Tenet claims owns 51% ownership of ASFC, does not own ASFC.

104.    In the Q&A Response, Joseph explained, without any supporting documents, that the two company shareholders of ASFC and two of the three ASFC induvial shareholders secretly hold 51% ownership on Tenet's behalf pursuant to a nominee shareholder agreement to circumvent Chinese regulatory restrictions. Paradoxically, Joseph claimed that Grizzly could have "easily verified [such nominee shareholder arrangement] with a minimum amount of research" despite Tenet's admitted effort of hiding such clandestine arrangement—if it even existed.

105.    The Grizzly Rebuttal Report questioned who the nominee shareholders are given the company shareholders' holdings do not add up to 21%.

106.    Tenet's representations regarding ASFC were false.

107.    <u>First</u>, Tenet lied about the date of ASFC's formation. The NECIPS corporate report of ASFC, attached hereto as Exhibit 6, shows that five persons founded ASFC[22] on May 14, 2018, meaning that it did not exist on December 7, 2017 when Tenet announced its acquisition.

108.    <u>Second</u>, contrary to Tenet's initial announcement, Huada is not ASFC's founding shareholder and Jiudong has never acquires 100% of ASFC. According to the NECIPS corporate report of ASFC in Exhibit 6, the five ASFC founding shareholders are Yixing Langyi Environmental Protection Technology Co., Ltd. ("Yixing Langyi", owning 35% ASFC equity),

---

[22] ASFC's Chinese name has always been 宜兴市亚东科技小额贷款有限公司 or Yixing Yadong Technology Micro-loan Co., Ltd.— "Yadong Ltd." as Tenet called—since its formation.

Wuxi Jiajun Jewelry Trading Co., Ltd. ("Wuxi Jiajun", owning 20% ASFC equity), Kelong Chen ("Chen", owning 15% ASFC equity), Chusheng Zhou ("Zhou", owning 15% ASFC equity) and Changsheng Zhuo ("Zhuo", owning 15% ASFC equity). The shareholders and their respective holdings have never changed since ASFC's formation. The Qixinbao database shows that Chen, Zhou and Zhuo are also owners and principles of Jiudong, Tenet's partner, as Joseph claimed. *See* Exhibit 7. According to the Qixinbao database, Chen also owns 55% equity of and hence controls Wuxi Jiajun. *See* Exhibit 8. But according to Yixing Langyi's Qixinbao record, Yixing Langyi— the largest shareholder of ASFC—has no relationship with Jiudong. *See* Exhibit 9. Therefore, the related parties of Jiudong collectively own only 65% equity of ASFC. This ASFC ownership structure contradicts Tenet's representation that Jiudong purchased the entire ownership of ASFC from Huada.

109.   Third, based on the Qixinbao database as shown in Exhibits 7, 8 and 9, Yixing Langyi is not a Jiudong related party. Given Tenet's representation that it holds 51% of ASFC through Jiudong's partnership, Joseph's representation that the two ASFC corporate shareholders hold 21% ASFC equity on behalf of Tenet cannot align with the fact that Wuxi Jiajun, the only corporate related party of Jiudong, owns only 20% ASFC equity.

110.   Fourth, even if Tenet indeed owns 51% ASFC equity via a purported nominee agreement, Tenet failed to disclose the material risks associated with such secret arrangement circumventing Chinese law, resulting in its removal from Nasdaq.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS

### Regarding the Huayan Asset Acquisition

111.   On September 14, 2021, Tenet announced that it acquired all assets of Huayan. Specifically, the press release states

[Tenet] today announced that it has acquired the assets of Huayan Kun Tai Technology Company Ltd. ("Huayan"), a private company that provides various SaaS (software as a service) solutions to insurers and insurance brokers in China.

**Huayan provides its solutions primarily through its proprietary "Heartbeat" (https://www.happysalers.com) insurance product management and brokerage platform**, where users pay a subscription fee to access the services plus a commission-related service fee when applicable. **All of Huayan's assets, including the Heartbeat platform, its employees and its operations will be transferred to [Tenet's] Xinxiang Technologies Ltd. subsidiary ("Xinxiang"), which was created in the second quarter of 2021 specifically to help bring insurance related products and services to members of [Tenet's] Business Hub.**

As compensation for the acquisition of Huayan's operations, Peak will pay Huayan and its shareholders a total of $31.0M, of which $11.0M will be payable in cash to be used by Huayan in various capacities to position Xinxiang for success **as Huayan winds down its operations and transfers them to Xinxiang**. The remaining $20.0M will be payable to Huayan's shareholders in common shares of Peak, of which $6.0M will be payable within ten business days of the signing of the agreement and $14.0M will be payable over a three-year period based on certain net income targets to be achieved by Xinxiang during that period.

….

From an operational standpoint, **we believe that pairing the Business Hub's analytical and AI capabilities with the Heartbeat platform will allow us to improve our existing product offering, attract new members and users, and even work with insurers to develop new products specific to certain industries, all of which should bring a whole new dimension to the Business Hub and increase its impact on B2B transactions in China, concluded [Huayan CEO Kai] Cui.**

112.    These statements were materially false and misleading because Defendants failed to disclose that (i) Huayan has never owned or operated the Heartbeat website; (ii) contrary to Tenet's representation that Huayan was winding down its operations and transferring "all of Huayan's assets, including the Heartbeat platform, its employees and its operations" to Xinxiang, Huayan still actively operated its business by registering 5 software copyrights during the post-acquisition period of November 24, 2021 to February 11, 2022, but did not transfer any of its copyrights to Xinxiang; (iii) Xinxiang is not in operation and has been included by the Chinese

government in the "List of Enterprises with Abnormal Operations" since September 14, 2021 because the Chinese government was unable to contact Xinxiang via its registered place of business; (iv) contrary to Tenet's representation that Huayan was transferring "all of Huayan's assets, including the Heartbeat platform, its employees and its operations" to Xinxiang, in 2022, Beijing Huike still actively operates the Heartbeat website and provided annual registrations for the Heartbeat website with MIIT and MPS.

113.    On October 5, 2021, Joseph stated in the Q&A Response that

"**Huayan and Huike are affiliated companies owned by the same people** and that's who our transaction is with. When we make acquisitions, we prefer to acquire the assets, IP, clients, management and employees. That way we get all the benefits and avoid any potential skeletons that may be hiding in the company. So before proceeding with this transaction, **we asked Huayan to transfer all its IP, including the Heartbeat platform, to Huike back in March**. Until that time, Huike was an empty shell owned by Kai Cui without even a bank account, so **we felt it would be a safe place to park the assets until we could finalize our deal with Huayan's shareholders. With the deal we have in place, we get all the assets from Huayan and Huike.** We're not idiots, no payment will be made, most of it in shares anyway, until the assets are transferred to our new subsidiary, which we created specifically to take over Huayan's operations.

*        *        *

So it's normal that it hasn't generated any revenue. Again, this is just more sloppy research by this outfit. **The operating company leveraging the Heartbeat platform until this year was Huayan."**

114.    These statements were materially false and misleading because Defendants failed to disclose that (i) Huayan has never owned or operated the Heartbeat website; (ii) Huayan and Beijing Huike are not owned by the same people because Huayan is owned by six individuals whereas Beijing Huike is owned by one individual; (iii) contrary to Joseph's claim that Huayan transferred "all its IP, including the Heartbeat platform, to Huike back in March[, 2021]", Huayan never transferred any IP rights to Beijing Huike; (iv) contrary to Joseph's claim that "[Tenet] get[s] all the assets from Huayan and Huike", Tenet has not obtained any assets from Huayan and Huike.

Huayan and Huike still actively operate their respective businesses since September 14, 2021, maintaining their respective IP rights, trademarks and website; in fact, Xinxiang, the Tenet subsidiary purportedly to take over all Huayan assets, is not in operation and has been included by the Chinese government in the "List of Enterprises with Abnormal Operations" since September 14, 2021 because the Chinese government was unable to contact Xinxiang via its registered place of business.

**Regarding the Jinxiaoer Acquisition**

115.    Tenet's September 3, 2021 Form 40-F, Exhibit 99.172 (the Annual Information Form Dated May 6, 2021 for the Financial Year Ended December 31, 2020) states that Tenet was to acquire "70% equity stake in Jinxiaoer" over a period of 18 months under the November 7, 2019 purchase agreement. The Form 40-F states that Tenet "decided to revise Jinxiaoer's revenue model" and "spent a large portion of the [fourth] quarter on the development and implementation of features to better meet its clients' needs and discussed the best ways to integrate the Jinxiaoer loan brokerage platform into the Lending Hub."

116.    These statements were materially false and misleading because Defendants failed to disclose that (i) Tenet does not own any equity of Jinxiaoer Company; (ii) Tenet does not own the Jinxiaoer Platform.

117.    In the Q&A Response, Joseph states that

We're after the assets, not the company. **When we acquired Jinxiaoer's assets**, the plan was to roll everything over into a new subsidiary. But we eventually decided that it would be best to revamp the software and the business model to better fit into our Business Hub. **So right now, we're using Jinxiaoer's technology, but not through a standalone subsidiary. The app is no longer available on app stores in its original version because it's no longer being used for those original purposes. It's now exclusively used to drive traffic and facilitate specific types of transactions on our Hub.**

118.    These statements were materially false and misleading because Defendants failed to disclose that Tenet did not acquire and does not own Jinxiaoer Company's asset at issue—the Jinxiaoer Platform.

**Regarding ASFC**

119.    Tenet's September 3, 2021 Form 40-F, Exhibit 99.241 (Management's Discussion and Analysis for the three and six-month periods ended June 30, 2021 and June 30, 2020) lists ASFC as one of Tenet's key subsidiaries. Exhibit 99.240 (Tenet's Interim financial statements for the three and six-month periods ended June 30, 2021 and 2020) represents that Tenet owns 51% ownership and voting right of ASFC and consolidated ASFC's financials within Tenet's consolidated financial statements.

120.    These statements were materially false and misleading because Defendants failed to disclose that Tenet does not own 51% ASFC equity.

121.    In the Q&A Response, Joseph states that

Guys, I appreciate you giving me this opportunity to address this report, but seriously, what a waste of time. All they had to do was actually do just a little bit of real research and they would see that the three individuals listed as shareholders of ASFC are principles of Jiu Dong. **If you recall, Jiu Dong is the company we partnered with to create ASFC, which owns 49% of ASFC while we own the 51% majority stake. Because of financial regulations at the time of its creation, we were advised that it would be better to have local Chinese individuals or companies hold our shares in ASFC on our behalf. So two of the three Jiu Dong principles holding shares in ASFC are holding those shares, representing a 30% stake, on our behalf through what's called a nominee shareholder agreement, which is perfectly legal and acceptable in China. The remaining 21% is being held on our behalf by the two companies listed as shareholders in ASFC.** Again, this is something that can easily be verified with a minimum amount of research.

122.    These statements were materially false and misleading because Defendants failed to disclose that (i) Tenet does not directly own 51% ASFC equity; (ii) Tenet does not indirectly

own 51% ASFC equity via a nominee shareholder agreement with Jiudong's related parties; (iii)
even if Tenet indeed owns 51% ASFC equity via a purported nominee agreement, Tenet failed to
disclose such secret arrangement circumventing Chinese law violated the SEC disclosure
requirements and had incurred an imminent material risk of being removed from NASDAQ.

### THE TRUTH BEGINS TO EMERGE

123.    On October 4, 2021, market analyst Grizzly Reports published the Grizzly Report
revealing multiple material misrepresentations and omissions made by Tenet regarding the
Heartbeat acquisition, Jinxiaoer acquisition and ASFC. Upon the publication of the Grizzly Report,
Tenet's stock price plunged by 17.47% with unusually high daily trading volume, from $7.4/share
at the opening to close at $6.19 on October 4, 2017.

124.    On October 5, 2021, the Company published the Q&A Response refuting the
findings of the Grizzly Report. As a result, Tenet's stock price rose by 23.1% to close at
$7.62/share. But as stated above and below, the Q&A Response is rife with materially false and
misleading statements. On October 13, 2021, Grizzly Reports published its Grizzly Rebuttal
Report further revealing the misleading statements issued by Tenet regarding the Heartbeat
acquisition, Jinxiaoer acquisition and ASFC. Upon the publication of the Grizzly Rebuttal Report,
Tenet's share prices dropped by $0.57 per share, or 6%, to close at $7.98 on October 13, 2021,
damaging investors.

125.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline
in the market value of the Company's shares, Plaintiffs and other Class members have suffered
significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

126.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and Sub-Classes III and IV. Excluded from Sub-Classes III and IV are Defendants, the officers and directors of Tenet, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

127.    The members of Sub-Classes III and IV are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tenet securities were actively traded OTC and on NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds, if not thousands of members in the proposed Sub-Classes III and IV.

128.    Plaintiffs' claims are typical of the claims of the members of respective Sub-Class III and Sub-Class IV as all members of the respective Classes are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

129.    Plaintiffs will fairly and adequately protect the interests of the members of Sub-Class III and Sub-Class IV and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

130.    Common questions of law and fact exist as to all members of the respective Sub-Class III and Sub-Class IV and predominate over any questions solely affecting individual members of Sub-Class III and Sub-Class IV. Among the questions of law and fact common to the respective Sub-Class III and Sub-Class IV are:

      a.   whether Defendants violated the Exchange as alleged herein;

     b.   whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition and business of Tenet;

     c.   whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

     d.   whether the Defendants caused Tenet to issue false and misleading filings during the Class Period;

     e.   whether Defendants acted knowingly or recklessly in issuing false statements;

     f.   whether the prices of Tenet securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

     g.   whether the members of Sub-Classes III and IV have sustained damages and, if so, what is the proper measure of damages.

131.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**Application of Presumption of Reliance:**

**<u>Fraud on the Market</u>**

132.    Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.  Tenet common shares met the requirements for listing, and were listed and actively traded OTC and on the NASDAQ, efficient markets;

b.  As a public issuer, Tenet filed periodic public reports;

c.  Tenet regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

d.  Tenet's common shares were liquid and traded with moderate to heavy volume during the Class Period; and

e.  Tenet was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

133.   Based on the foregoing, the market for Tenet common shares promptly digested current information regarding Tenet from all publicly available sources and reflected such information in the prices of the securities, and Plaintiffs and the members of Sub-Class III and Sub-Class IV are entitled to a presumption of reliance upon the integrity of the market.

**Applicability of Presumption of Reliance:**

***Affiliated Ute***

134.   Alternatively, Plaintiffs and the members of Sub-Class III and Sub-Class IV are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material

information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## EXCHANGE ACT CLAIMS

### COUNT III
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants Regarding Misstatements and Omissions Concerning Business Ownership

135.    Plaintiffs repeat and reallege each and every allegation set forth in ¶¶1-27, 80-134 as if fully set forth herein.

136.    This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

137.    During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

138.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

a.  employed devices, schemes and artifices to defraud;

b.  made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

c.  engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of Tenet securities during the Class Period.

139.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Tenet were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Tenet, their control over, and/or receipt and/or modification of Tenet's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Tenet, participated in the fraudulent scheme alleged herein.

140.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiffs and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Tenet personnel to members of the investing public, including Plaintiffs and the Class.

141.     As a result of the foregoing, the market price of Tenet common shares was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiffs and the other members of the Class relied on the statements described above and/or the integrity of the market price of Tenet common shares during the Class Period in purchasing Tenet common shares at prices that were artificially inflated as a result of Defendants' false and misleading statements.

142.     Had Plaintiffs and the other members of the Class been aware that the market price of Tenet common shares had been artificially and falsely inflated by Defendants' misleading

statements and by the material adverse information which Defendants did not disclose, they would

not have purchased Tenet common shares at the artificially inflated prices that they did, or at all.

143.    As a result of the wrongful conduct alleged herein, Plaintiffs and other members

of the Class have suffered damages in an amount to be established at trial.

144.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934

Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiffs and the other members

of the Class for substantial damages which they suffered in connection with their purchase of

Tenet common shares during the Class Period.

**COUNT IV**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants Regarding Misstatements**
**and Omissions Concerning Business Ownership**

145.    Plaintiffs repeat and reallege each and every allegation as set forth in ¶¶1-27, 80-

144 as if fully set forth herein.

146.    During the Class Period, the Individual Defendants participated in the operation

and management of Tenet, and conducted and participated, directly and indirectly, in the conduct

of Tenet's business affairs. Because of their senior positions, they knew the adverse non-public

information about Tenet's misstatement of revenue and profit and false financial statements.

147.    As officers and/or directors of a publicly owned company, the Individual

Defendants had a duty to disseminate accurate and truthful information with respect to Tenet's

financial condition and results of operations, and to correct promptly any public statements issued

by Tenet which had become materially false or misleading.

148.    Because of their positions of control and authority as senior officers, the

Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which Tenet disseminated in the marketplace during the Class Period

42

concerning Tenet's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Tenet to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Tenet within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Tenet common shares.

149.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Tenet.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, prays for judgment and relief as follows:

a.  declaring this action to be a proper class action, designating Alejandro Handal as Lead Plaintiff and certifying him as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Lead Plaintiff's counsel as Lead Counsel;

b.  awarding damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, together with interest thereon;

c.  awarding Plaintiffs and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.  awarding Plaintiffs and other members of the Class such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.


Dated: April 11, 2022                Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
By: /s/ *Jacob A. Goldberg*_____
Mr. Jacob A. Goldberg
The Rosen Law Firm, P.A.
101 Greenwood Avenue
Suite 440
Jenkintown, PA  19046
Telephone: (215) 600-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com

Mr. Phillip Kim
Mr. Laurence M. Rosen
Ms. Jing Chen
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
       lrosen@rosenlegal.com
       jchen@rosenlegal.com


*Counsel for Lead Plaintiff Alejandro Handal and the putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Jacob A. Goldberg